IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA QUINTA FRANCHISING, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>KETTLEMAN CITY COMMERCIAL, LLC,<br><br>Defendant. | 1:07-cv-01230 OWW GSA<br><br>FINDINGS AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>(Document 20) |

Plaintiff La Quinta Franchising, LLC ("Plaintiff") filed the instant motion for default judgment on March 27, 2008. Defendant Kettleman City Commercial, LLC ("Defendant") did not file an opposition or otherwise respond to the motion. This court considered Plaintiff's default judgment motion on the record and without oral argument on the now vacated May 9, 2008 hearing, pursuant to this court's Local Rule 78-230(c) and (h).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this action on August 22, 2007, pursuant to the court's diversity jurisdiction.[1]
The complaint alleges a single cause of action for breach of contract and seeks damages in the

---

[1] Plaintiff La Quinta Franchising, LLC, is a limited liability corporation incorporated under the laws of the State of Nevada with its principal place of business in the State of Texas. Defendant Kettleman City Commercial, LLC, is a limited liability corporation organized under the laws of the State of California with its principal place of business in Clovis, California. Complaint, at ¶ 1.

1

amount $120,834.67, for liquidated damages, prejudgment interest, and attorneys' fees and costs.

According to the complaint, Defendant entered into a license agreement ("Franchise Agreement") with Plaintiff with an effective date of January 10, 2006. Complaint, at ¶ 7 and Ex. 1. Under the agreement, Defendant became a franchisee of a hotel service operation. Pursuant to the terms of the Agreement, Plaintiff agreed to grant a non-exclusive license to Defendant to operate a hotel establishment in Kettleman City, California, using certain of Plaintiff's trademarks, copyrights, marketing materials, training programs and trade secrets. Complaint, at ¶¶ 7, 8 and Ex. 1, at ¶ 3.01. In return, Defendant agreed to (1) construct the Kettleman City La Quinta Inn and Suites ("La Quinta Facility"); and (2) open and operate the La Quinta Facility for a term of 20 years under the La Quinta intellectual property marks. Complaint, at ¶ 9 and Ex. 1, at ¶¶ D, 5.02, 5.03.

Plaintiff filed the instant motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) on March 27, 2008. Defendant was served with the motion, but has failed to respond or otherwise communicate with the court.

Plaintiff seeks a judgment as follows:

1. Liquidated Damages in the amount of $100,000.00;
2. Attorneys' fees in the amount of $11,949.50;
3. Costs in the amount of $4,186.76; and
4. Prejudgment interest in the amount of $4,698.41.

**DISCUSSION**

A. Legal Standard

Plaintiff moves for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), which provides that judgment may be entered:

> By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or competent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

2

        (A) conduct an accounting;
        (B) determine the amount of damages;
        (C) establish the truth of any allegation by evidence; or
        (D) investigate any other matter.

"Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true." *Dundee Cement Co. v. Highway Pipe and Concrete Products*, 722 F.2d 1319, 1323 (7th Cir. 1983); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987).

    Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).

B.    <u>Plaintiff is Entitled to Entry of Default Judgment</u>

    Plaintiff seeks entry of default judgment against Defendant. Defendant's agent for service of process, Justo Padron, Jr., was served personally with the complaint on September 18, 2007. (Doc. 13). Defendant's agent for service of process/principal, Tariq Jamil Faridi, was served personally with the complaint on September 17, 2007. (Doc. 14). Defendant failed to respond to the complaint or otherwise appear in this action. The Clerk entered default against Defendant on November 30, 2007. Defendant, an incorporated entity, is not an infant or incompetent person, and is not in the military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940. Declaration of Joel Siegel in Support of Motion for Default Judgment ("Siegel Decl."), at ¶ 2.

    In light of Defendant's failure to appear, the apparent absence of excusable neglect, the risk of prejudice to Plaintiff resulting from the alleged breach by Defendant, the sufficiency of the complaint, and the apparent merit of Plaintiff's substantive claim as discussed below, Plaintiff is entitled to default judgment.

C. <u>The Complaint is Sufficient to Support Plaintiff's Claim.</u>

1. <u>Plaintiff's Allegations</u>

According to the Franchise Agreement, Defendant agreed to commence construction of the La Quinta Facility within six (6) months after the effective date of January 10, 2006. Complaint, at ¶ 10 and Ex. 1, at ¶ 5.03(b). Defendant did not commence construction by July 10, 2006. Complaint, at ¶ 16; *see also* Declaration of Rajiv Trivedi in Support of Motion for Default Judgment ("Trivedi Decl."), at ¶ 13. Plaintiff granted Defendant an extension until September 30, 2006, to begin construction of the La Quinta Facility. Complaint, at ¶ 17, and Ex. 2; Trivedi Decl., at ¶ 14. Defendant failed to meet the extended deadline. Complaint, at ¶ 18; Trivedi Decl., at ¶ 15.

On October 16, 2006, Plaintiff notified Defendant that it had failed to meet the deadline for commencing construction of the La Quinta Facility and that Defendant would be placed in default if it did not remedy the situation. Compliant, at ¶ 18, and Ex. 3.

On November 21, 2006, Plaintiff sent Defendant a default notice. The default notice advised Defendant that it had 30 days to cure its default and if Defendant failed to do so, then Plaintiff would terminate the Franchise Agreement. The default notice also advised Defendant that if the Franchise Agreement was terminated as a result of Defendant's default, then Defendant would be liable for liquidated damages. Complaint, at ¶ 19, and Ex. 4.

On December 22, 2006, at Defendant's request, Plaintiff offered, without waiver, to extend Defendant's deadline to commence construction to March 21, 2007, for a fee of $10,000. Complaint, at ¶ 21, and Ex. 5. On January 11, 2007, Defendant's counsel requested that the extension documentation be changed from Kettleman City Commercial, LLC, to Kettleman City Commercial, Corp. Complaint, at ¶ 22, and Ex. 6. Plaintiff responded on January 22, 2007, and sent a Consent to Assignment of Franchise Agreement and a revised First Amendment to Franchise Agreement. Plaintiff requested that Defendant execute the documents so that its records would reflect the identity of the franchisee as a corporation rather than an LLC. Complaint, at ¶ 23, and Ex. 7. Defendant failed to provide the requested documentation or pay the $10,000 extension fee. Complaint, at ¶ 24; Trivedi Decl., at ¶ 20.

4

On February 26, 2007, Plaintiff sent another letter to Defendant's counsel requesting the documentation and extension fee. Complaint, at ¶ 24, and Ex. 8. Defendant did not respond. Complaint, at ¶ 25; Trivedi Decl., at ¶ 21.

On March 14, 2007, Plaintiff sent Defendant's counsel another letter. The letter informed Defendant that if it did not execute the documents and pay the extension fee by March 20, 2007, then Plaintiff would issue a default notice and begin termination of the Franchise Agreement. Complaint, at ¶ 25, and Ex. 9. Defendant did not provide the documentation, pay the fee or commence construction. Complaint, at ¶ 26; Trivedi Decl., at ¶ 22.

On March 22, 2007, Plaintiff sent Defendant a Notice of Default. The Notice of Default informed Defendant that it must commence construction of the La Quinta Facility on or before May 15, 2007, or Plaintiff would terminate the Franchise Agreement. Complaint, at ¶ 27, and Ex. 10. Defendant did not respond. Complaint, at ¶ 27; Trivedi Decl., at ¶ 23.

On April 26, 2007, Plaintiff sent Defendant a written notice of termination. The written notice of termination included a demand that Defendant remit $100,000.00 in liquidated damages to Plaintiff as required pursuant to the Franchise Agreement. Complaint, at ¶ 28, and Ex. 11. Defendant failed to pay the liquidated damages. Complaint, at ¶ 36; Trivedi Decl., at ¶ 26.

On August 22, 2007, Plaintiff commenced the present action to enforce the Franchise Agreement.

2.   Choice of Law Provisions

Plaintiff contends that Texas law applies to the Franchise Agreement. A term in the Franchise Agreement provides that it is governed by the laws of the State of Texas.[2] To determine controlling law, a federal court sitting in diversity looks to the forum state's choice of law rules. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under California Law, a choice of law provision is enforced when: (1) the

---

[2] Section 20.01 of the Franchise Agreement states: "This Agreement shall be construed under the laws of the State of Texas, provided the foregoing shall not constitute a waiver of any of your rights under any applicable franchise law of another state." Ex. 1, at ¶ 20.01.

chosen state has a substantial relationship to the parties or their transaction, or there is any other reasonable basis for the parties' choice of law; and (2) the chosen state's law is not contrary to a fundamental policy of California. *Nedlloyd Lines B.V. v. Superior Court of San Mateo*, 3 Cal.4th 459, 464-466, 11 Cal.Rptr.2d 330, 332-334 (1992); *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal.App.3d 987, 995-96 n.6, 101 Cal.Rptr. 347, 353 n.6 (1972) (parties may agree on the law governing their agreement).

Here, the State of Texas bears a substantial relationship to the parties and their transaction because Plaintiff's principal place of business is located in Texas. (Complaint, at ¶ 1.) Further, the essential elements of Plaintiff's breach of contract claim are similar under both Texas and California law. Accordingly, the court will apply Texas law to Plaintiff's contract claim.

2.  Breach of Contract Claim

Under Texas law, the elements of a breach of contract claim are: (1) the existence of a valid contract between the plaintiff and defendant; (2) the plaintiff performed; (3) the defendant breached the contract; and (4) the plaintiff was damaged by the breach.[3] *Clifton v. Premillenium, Ltd.*, 229 S.W.3d 857, 859 (Tex. App. 2007) (citing *Barnett v. Coppell N. Tex. Ct., Ltd.,* 123 S.W.3d 804, 815 (Tex. App. 2003).

Here, the complaint alleges that Plaintiff and Defendant entered into a license agreement, and that Defendant breached the agreement by failing to commence construction of the La Quinta Facility and by failing to pay liquidated damages following termination of the agreement. Plaintiff alleges that it performed its contractual obligation by granting Defendant a non-exclusive license to use Plaintiff's trademarks and marketing system. Plaintiff further alleges that as a result of Defendant's breach, Plaintiff suffered a loss of future revenue and has been damaged in an amount of at least $100,000.00. Complaint, at ¶¶ 7-10, 16-18, 32, 33, 36, 37, 39. Plaintiff's complaint states a claim for breach of contract. Based on the uncontested allegations, Plaintiff is entitled to relief.

---

[3] Under California law, the elements of a breach of contract claim are as follows: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach. *CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239, 70 Cal.Rptr.3d 667, 679 (2008).

3.     Requested Relief

Plaintiff seeks the following relief under the Franchise Agreement: (1) liquidated damages; (2) prejudgment interest; and (3) attorneys' fees and costs.

      a.     Liquidated Damages

The Franchise Agreement allows Plaintiff to recover liquidated damages if the agreement is terminated for any reason, such as default, before the facility opens for business.[4] Complaint, at ¶ 35, and Ex. 1, at ¶ 18.03. The liquidated damages provision is intended to compensate for lost royalty fees, lost market penetration, lost goodwill in the area, lost opportunity costs and the expense of developing another facility in the market area.

Under Texas law, a liquidated damages clause is enforceable if (1) the harm caused by the breach is incapable or difficult of estimation and (2) the amount of liquidated damages called for is a reasonable forecast of just compensation.[5] *Phillips v. Phillips*, 820 S.W.2d 785 (Tex. 1991). The fee charged "must be a reasonable estimate of damages, and those damages must be incapable of precise calculation." *BMG Direct Marketing, Inc. v. Peake*, 178 S.W.3d 763, 766 (Tex. 2005).

Here, the Franchise Agreement reflects that the parties agreed that the damages in the event of termination were "extremely difficult to calculate." Ex. 1, at ¶ 18.03, and Trivedi Decl., at ¶ 11. The uncontradicted declaration of Rajiv Trivedi indicates that the actual damages suffered by Plaintiff are likely to exceed the $100,000.00 in liquidated damages required by the Franchise Agreement. Trivedi Decl., at ¶ 11. Mr. Trivedi explains that it usually takes between two to four years for Plaintiff to re-franchise a territory after an agreement is terminated, and Plaintiff's ability to mitigate these damages is limited and it will suffer a loss greater than $100,000.00 as a result of

---

[4] The Franchise Agreement does not allow for liquidated damages if the agreement is terminated for certain reasons that are not applicable to the instant action. Ex. 1, at ¶ 18.03.

[5] The two-part test for determining whether a liquidated damages clause is enforceable under California law is similar. *See, e.g., Utility Consumers' Action Network, Inc. v. AT&T Broadband of Southern Cal.Inc. et al.*, 135 Cal.App.4th 1023, 1029, 37 Cal.Rptr.3d 827, 832 (Cal. App. 2006). The two-part test is: (1) whether fixing the amount of actual damages is impracticable or extremely difficult; and (2) whether the amount selected represents a reasonable endeavor by the parties to estimate fair compensation for the loss sustained.

7

Defendant's breach. *Id*. Defendant has not appeared in this action and has not challenged the negotiated liquidated damages clause. *R. Conrad Moore & Associates, Inc. v. Lerma*, 946 S.W.2d 90, 95 (Tex. App. 1997) (party asserting that a liquidated damages clause is unenforceable as a penalty bears the burden of proof). The amount of liquidated damages is $100,000.00.

### b. Prejudgment Interest

Plaintiff requests the award of prejudgment interest. Plaintiff contends that it is statutorily authorized under Texas Finance Code Section 302.002 to an award of prejudgment interest at 6% in a breach of contract case. In relevant part, section 302.002 provides:

> If a creditor has not agreed with an obligor to charge the obligor any interest, the creditor may charge and receive from the obligor legal interest at the rate of six percent a year on the principal amount of the credit extended beginning on the 30th day after the date on which the amount is due.

Texas Finance Code § 302.002. As such, under Section 302.002, contract interest, absent agreement, is 6%. *See*, *e.g.*, *Mobil Prod. Texas & New Mexico, Inc. v. Cantor*, 93 S.W.3d 916, 920 (Tex. App. 2002). In the alternative, Plaintiff argues it is entitled to prejudgment interest based on Texas common law principles of equity. *See*, *e.g.*, *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 485 (Tex. 1978). Prejudgment interest is "recoverable as a matter of right when an ascertainable sum of money is determined to have been due and payable at a definite date prior to judgment." *Miner-Dederick Constr. Corp. v. Mid-County Rental Service, Inc.*, 603 S.W.2d 193, 200 (1980).

Here, Plaintiff seeks prejudgment interest in the amount of $4,698.41. Mr. Trivedi's uncontradicted declaration explains that the Franchise Agreement was terminated on April 26, 2007, and that Defendant was required to pay the $100,000.00 in liquidated damages by May 26, 2007. Trivedi Decl., at ¶ 28. Mr. Trivedi identifies that the prejudgment interest was arrived at by taking the $100,000.00 owed under the liquidated damages clause and calculating an amount equal to 6% simple interest on the amount owed from May 26, 2007, to the date of March 20, 2008. *Id.*

8

          c.      <u>Attorneys' fees and costs</u>

Plaintiff contends that it is entitled to reasonable attorneys' fees in the amount of $11,949.50 and costs in the amount of $4,186.76. The Franchise Agreement contains an attorneys' fees provision that allows the party who prevails in any judicial proceeding to be awarded its costs and expenses, including reasonable attorney's fees. Ex. 1, at ¶ 20.07.

Plaintiff's litigation costs are supported by the declaration of its attorney and total $4,186.76 incurred in litigation. See Siegel Decl., at ¶ 4.

Plaintiff's attorneys' fees also are supported by the declaration of its attorney and identified by attorney as follows:

<u>Joel Siegel (Primary Handling Attorney)</u>: Rate varied between $460 and $505 per hour throughout the relevant time period. Billed 7.5 hours on the case for a total of $3,693.50.

<u>Glenn Plattner (Partner)</u>: Billed .3 hours at a billing rate of $455 an hour for a total of $136.50.

<u>Heather Orr (Associate)</u>: Billed 24.9 hours at a billing rate of $305 and $360 per hour for a total of $8,019.50.

<u>Sue Gordon (Paralegal)</u>: Billed .4 hours at a billing rate of $250 for a total of $100.00.

Siegel Decl., at ¶ 4. Plaintiff's attorney further contends that the fees are both reasonable and customary in the community for provision of legal services in litigation of this nature. *Id.*

**CONCLUSION AND RECOMMENDATION**

For the reasons discussed above, the Court RECOMMENDS that:

1. Plaintiff's motion for default judgment in favor of Plaintiff and against Defendant Kettleman City Commercial, LLC, be GRANTED;
2. Plaintiff be AWARDED liquidated damages in the amount of $100,000.00;
2. Plaintiff be AWARDED prejudgment interest in the amount of $4,698.41;
2. Plaintiff be AWARDED costs in the amount of $4,186.76;

9

1	3.	Plaintiff be AWARDED attorneys' fees in the amount of $11,949.50.

2    These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304. Within fifteen (15) court days of service of this recommendation, any party may file written objections to these findings and recommendation with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 14, 2008**              /s/ **Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE